1  CLAUDIA G. SILVA, County Counsel (SBN 167868)
   Office of County Counsel, County of San Diego
2  MICHAEL P. MASTERSON, Senior Deputy (SBN 239246)
   AUSTIN M. UHLER, Senior Deputy (SBN 319684)
3  1600 Pacific Highway, Room 355
   San Diego, California 92101-2469
4  Telephone: (619) 531-4860; Fax: (619) 531-6005
   Email: michael.masterson@sdcounty.ca.gov
5         austin.uhler@sdcounty.ca.gov

6  Attorneys for Defendants,
   Nathan Fletcher, Nora Vargas, Terra Lawson-Remer,
7  Jim Desmond, Joel Anderson, Cynthia Paes, and Michael Vu

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  KRISTIN VENT,                          ) No. 3:22-cv-01651-RBM-DDL
                                           )
12          Plaintiff,                     ) **NOTICE OF MOTION AND**
                                           ) **MOTION TO DISMISS COMPLAINT**
13      v.                                 )
                                           )
14  NATHAN FLETCHER, NORA VARGAS,          ) Date:  January 17, 2023
    TERRA LAWSON REMER, JIM                )
15  DESMOND, JOEL ANDERSON,                ) NO ORAL ARGUMENT UNLESS
    CYNTHIA PAES, MICHAEL VU,              ) ORDERED BY THE COURT
16                                         )
            Defendants.                    ) Judge:  Hon. Ruth Bermudez Montenegro
17                                         ) Magistrate Judge:  David D. Leshner
                                           )
18                                         ) Complaint Filed: October 24, 2022
                                           )
19                                         )
                                           )
20  _____   )

21

22

23

24

25

26

27

28

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 17, 2023, at a time ordered by the Court or as soon thereafter as the matter may be heard before the Honorable Ruth Bermudez Montenegro in Courtroom 5B (5th Floor) of this Court, Defendants Nathan Fletcher, Nora Vargas, Terra Lawson-Remer, Jim Desmond, Joel Anderson, Cynthia Paes, and Michael Vu ("Defendants") will and hereby do move to dismiss the Complaint of Plaintiff Kristin Vent ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is made on the grounds that Plaintiff lacks standing to bring the claims set forth in the Complaint, the claims are barred by the doctrine of laches and are moot, and the alleged violation of the Constitution's Guarantee Clause fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the accompanying request for judicial notice and declaration of Austin M. Uhler, the complete files and records of this action, and upon such other and further evidence as may be presented at the hearing of this motion.

DATED: November 22, 2022      CLAUDIA G. SILVA, County Counsel

By: s/Austin M. Uhler
AUSTIN M. UHLER, Senior Deputy
Attorneys for Defendants, Nathan Fletcher,
Nora Vargas, Terra Lawson-Remer, Jim
Desmond, Joel Anderson, Cynthia Paes, and
Michael Vu

# DECLARATION OF SERVICE

I, the undersigned, declare:

I am over the age of eighteen years and not a party to the case; I am employed in, and am a resident of, the County of San Diego, California where the mailing occurs; and my business address is: 1600 Pacific Highway, Room 355, San Diego, California 92101.

On November 22, 2022, I served the following documents:

**NOTICE OF MOTION AND MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**DECLARATION OF AUSTIN M. UHLER IN SUPPORT OF MOTION TO DISMISS**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**

as follows:

- ✓ **Via Electronic Service:** By e-mailing an electronic version of the documents to: kristinvent17@cox.com; kristinvent17@gmail.com.
- ✓ **Via U.S. Mail:** By placing a copy in a separate envelope, with postage fully prepaid, for each addressee named below and depositing each in the U.S. Mail at San Diego, California, following ordinary business practice.

> Kristin Vent
> 2017 Sonnett Street
> El Cajon, CA 92019

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 22, 2022, at San Diego, California.

> s/A. Montiel
> Confidential Legal Secretary

CLAUDIA G. SILVA, County Counsel (SBN 167868)
Office of County Counsel, County of San Diego
MICHAEL P. MASTERSON, Senior Deputy (SBN 239246)
AUSTIN M. Uhler, Senior Deputy (SBN 319684)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4860; Fax: (619) 531-6005
Email: michael.masterson@sdcounty.ca.gov
        austin.uhler@sdcounty.ca.gov

Attorneys for Defendants,
Nathan Fletcher, Nora Vargas, Terra Lawson-Remer,
Jim Desmond, Joel Anderson, Cynthia Paes, and Michael Vu

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN VENT,<br><br>          Plaintiff, pro se,<br><br>     v.<br><br>NATHAN FLETCHER, NORA VARGAS, TERRA LAWSON REMER, JIM DESMOND, JOEL ANDERSON, CYNTHIA PAES, MICHAEL VU,<br><br>          Defendants. | No. 3:22-cv-01651-RBM-DDL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date:  January 17, 2023<br><br>NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT<br><br>Judge:  Hon. Ruth Bermudez Montenegro<br>Magistrate Judge:  David D. Leshner<br><br>Complaint Filed: October 24, 2022 |

# Table of contents

**Page(s)**

I.     Introduction………………………………………………………………1

II.    Summary of Factual Allegations………………………………………..2

III.   Legal Standards on Motion to Dismiss………………………………....4

IV.    Matters Subject to Judicial Notice……………………………………....4

V.     Argument………………………………………………………………..5

    A. Plaintiff's Own Allegations Defeat Standing………………………..5

        1. Plaintiff Alleges a Generalized Grievance Based on Conjecture, Not a Particularized, Actual Injury in Fact……………………………………..6

        2. Plaintiff Alleges No Injury Fairly Traceable to Defendants…………..9

    B. Plaintiff's Suit is Barred by the Doctrine of Laches………………………10

    C. Any Once-Viable Claims Would Now Be Moot…………………………..11

    D. Plaintiff Fails to State a Guarantee-Clause Claim…………………………12

VI.    Leave to Amend is Not Warranted…………………………………………12

VII.   Conclusion………………………………………………………………..13

# Table of Authorities

**Page(s)**

## Cases

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................4

*Bowyer v. Ducey*
  506 F. Supp. 3d 699 (D. Ariz. 2020)....................................8, 10, 12, 14

*Carney v. Adams*
  141 S. Ct. 493 (2020)..............................................................7

*Election Integrity Project, Inc., et al. v. Weber*
  No. 21-56061, 2022 WL 16647768 (9th Cir. Nov. 3, 2022)..................9

*Danjaq LLC v. Sony Corp.*
  263 F.3d 942 (9th Cir. 2001) ....................................................11

*Donald J. Trump for President v. Cegavske*
  488 F. Supp. 3d 993 (D. Nev. 2020) ...........................................8

*Foman v. Davis*
  371 U.S. 178 (1962) ..............................................................15

*George Nelson Foundation v. Modernica, Inc.*
  12 F. Supp. 3d 635 (S.D.N.Y. 2014) ..........................................11

*King v. Whitmer*
  505 F. Supp. 3d 720 (E.D. Mich. 2020) .......................................12

*Kroessler v. CVS Health Corp.*
  977 F.3d 803 (9th Cir. 2020)....................................................15

*Lake v. Hobbs*
  No. 22-677, 2022 WL 3700756 (D. Ariz. Aug. 26, 2022)................9-10

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014) ...................................................5

*Mecinas v. Hobbs*
  30 F.4th 890 (9th Cir. 2022)......................................................4

*New York v. U.S.*
  505 U.S. 144 (1992) ..............................................................14

*Pirtle v. Nago*
  No. 22-381, 2022 WL 17082168 (D. Haw. Nov. 18, 2022) ...............9, 15

*Roberts v. Caskey*,
  No. 22-2366, 2022 WL 11089308 (D. Kan. Oct. 19, 2022) ................9

*Rosati v. Igbinoso*
791 F.3d 1037 (9th Cir. 2015) ...................................................................... 14

*Rucho v. Common Cause*
139 S. Ct. 2484 (2019) ................................................................................... 14

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ........................................................................ 4

*Soules v. Kauaians for Nukolii Campaign Commission*
849 F.2d 1176 (9th Cir. 1988) ...................................................................... 12

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ......................................................................................... 7

*Trump v. Wisconsin Elections Commission*
983 F.3d 919 (7th Cir. 2020) ........................................................................ 12

*United States v. Sanchez-Gomez*
138 S. Ct. 1532 (2018) ................................................................................... 13

*Wild Rockies v. Savage*
897 F.3d 1025 (9th Cir. 2018) ...................................................................... 13

*Wildwest Inst. v. Kurth*
855 F.3d 995 (9th Cir. 2017) ........................................................................ 13

*Wood v. Raffensperger*
981 F.3d 1307 (11th Cir. 2020) ............................................................ 7, 10-11

**Statutes**

Fed. R. Evid. 201(b)(2) .................................................................................... 5

**Constitutional Provisions**

Fourteenth Amendement ................................................................................... 2

U.S. Const. Art. III, ....................................................................................... 11

U.S. Const. Art. III, § 1 .................................................................................... 6

U.S. Const. Art. IV, § 4 .................................................................................. 12

**Court Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 4

Federal Rule of Civil Procedure 12(b)(6) ................................................... 4, 10

Memorandum of Points and Authorities in Support of Motion to Dismiss

## I.  __INTRODUCTION__

After early voting had been underway for 2 weeks in the November 2022 general election, Plaintiff Kristin Vent filed against San Diego County's Board of Supervisors and Registrar of Voters a 300-plus-page complaint setting forth an elliptical yet sweeping critique of election cybersecurity practices in all fifty states. Taking large portions verbatim from complaints filed in at least five other cases—one of which was already dismissed without leave to amend—she asks this Court to urgently de-certify the 2020 general election results and impose in this County a new voting system of exclusively in-person, paper ballot, day-of-election voting with immediate reporting of results until Defendants "can prove beyond a reasonable doubt" that their voting systems do not have a trapdoor through which nefarious actors could manipulate votes. Granting such extraordinary relief now, when the results of the 2022 general election are in the process of being certified, would thrust the last 2 years of elections into chaos. In its Order Denying Motion for Temporary Restraining Order, this Court correctly refused to do so, and anticipated the key reasons that the Complaint is subject to dismissal. *See* Doc. 3.

Defendants offer four such reasons. First, Plaintiff lacks standing. She alleges a generalized grievance that her vote is at risk of being diluted by fraud. She alleges that electronic voting machines are vulnerable by design, affecting all voters in the United States wherever the machines are used. She ***admits*** that ***all eligible voters*** are aggrieved. She further ***admits*** that it will be impossible to prove that any person actually manipulated any votes. Second, her claims are barred by the doctrine of laches given how much time has passed since the certification of the November 2020 election results and given that voting in the November 2022 election is finished. Third, any claims would be moot because all three of the challenged elections are over. Fourth, Plaintiff's allegations that Defendants violated the Guarantee Clause do not state a claim.

Finally, the Complaint should be dismissed without leave to amend because it is absolutely clear that the lack of standing cannot be cured by amendment. No plaintiff can particularize an injury that by its nature would affect all voters equally.

## II.  **SUMMARY OF FACTUAL ALLEGATIONS**

Plaintiff Kristin Vent alleges that she is a resident and registered voter of San Diego County. *See* Doc. 1, Petition for Injunctive Relief (Election Matter) ("Complaint") at 3. She alleges that the methods by which elections are conducted in the County "cannot be proven to provide the fair elections guaranteed" by the Fourteenth Amendment to the U.S. Constitution. *Id.* at 4 ¶ 1. She alleges that a "cryptographic security risk" called "a Trapdoor mechanism" is "inherent in ***all*** voting machines." *Id.* at 6 ¶ 13 (emphasis added). According to her, the Trapdoor mechanism "makes the output of votes shown in reported election results impossible to reconcile with the ballot inputs," and does so "by design." *Id.* This mechanism is not only present in San Diego County's systems but allegedly in "*[a]ll* voting systems in use in the United States, now and in 2020." *Id.* at 11 ¶ 31 (emphasis added).[1]

Plaintiff alleges that the voting systems used throughout California and made by ten separate companies are all subject to tampering. *See id.* at 11 ¶¶ 28–31. She alleges that the machines specifically used in San Diego County are made by Dominion Voting Systems and managed by DIMS.net Product Suite software, which is provided by RunBeck Election Services, Inc. *See id.* at 11 ¶¶ 29-30 & Ex. B, Doc. 1-2 at 40. She also alleges that, between dates in 2016 and 2020, the County contracted with SOE Corporation for election training software made by a company called SCYTL. *See id.* at 51 & Ex. M, Doc. 1-4 at 16-53. The contract for SCYTL software is problematic, Plaintiff alleges, because SCYTL is a foreign company that controls voting information and makes it available for manipulation through the Trapdoor mechanism. *See id.* at 17 ¶ 5, 47 ¶ 7. She further alleges that every county in the state is required to use an election

---

[1] Complaints with nearly verbatim "Trapdoor" allegations have been filed in at least five other cases. *See, e.g.*, *Maria v. Weber*, No. 22-5105 (C.D. Cal. compl. filed July 20, 2022); *Cinquanta v. Weber*, No. 22-5383 (C.D. Cal. compl. filed Aug. 2, 2022); *Maria v. Bd. of Supervisors of Cnty. of Ventura*, No. 22-5582, (C.D. Cal. compl. filed Aug. 8, 2022); *Cinquanta v. Bd. of Supervisors of Cnty. of Los Angeles*, No. 22-5645 (C.D. Cal. compl. filed Aug. 9, 2022); *Pirtle v. Nago*, No. 22-381 (D. Haw. compl. filed Aug. 18, 2022). One has been dismissed without leave to amend. *See Pirtle*, Doc. 19.

night reporting program from SCYTL. *See id.* at 22 ¶ 13. Along with fourteen voting centers in Orange and Los Angeles Counties, she alleges that one voting center in San Diego County was "WI-FI ENABLED" during the June 2022 primary election. *Id.* at 52 ¶¶ 8-10 & Ex. P, Doc. 1-5 at 2.

Plaintiff also alleges that in November 2020, all voting systems in California lacked approval from a validly accredited voting system testing laboratory ("VSTL"). *See id.* at 8 ¶ 24. She alleges that before and during the November 2020 election, neither of the two VSTLs typically accredited by the federal Election Assistance Commission ("EAC") had "current un-expired accreditations." *Id.* The lack of VSTL accreditation was crucial, she alleges, because VTSLs are the "most important component" of the election system responsible for examining commercial off-the-shelf ("COTS") hardware mostly manufactured in China that could contain "backdoors." *Id.* at 12 ¶¶ 20, 22. Because the County's current voting system was not certified by VSTLs with valid *un-expired* EAC accreditations in 2020, she alleges, election results in the County "were and will be subject and vulnerable to modification by foreign or domestic nefarious actors." *Id.* at 17 ¶ 4. (In a document attached to the Complaint, EAC Voting System Testing and Certification Director Jerome Lovato explains that administrative error and COVID-19 delays caused the EAC to fail to update VSTL-accreditation certificates but that *both* VSTLs met the accreditation requirements and retained their accreditations throughout the period affected by these challenges. *See id.* Ex. T, Doc. 1-5 at 18.)

However, Plaintiff does not allege that any vote manipulation has taken place. According to her, such manipulation is impossible to prove. *See id.* at 14 ¶¶ 34-35 ("[D]ue to the Trapdoor mechanism it is impossible to prove that the election was fair . . . [and] impossible to prove that the election was unfair."). Instead, she alleges that voters have "NO METHOD" of proving that their votes were accurately counted. *Id.* at 64 ¶ 17. She therefore alleges that "[a]ny eligible voter . . . is an aggrieved party." *Id.* She alleges that until a system of "in-person, paper ballot, day-of-election voting . . . with results reported immediately" is re-established, "Americans cannot, do not, and will not

1  have any degree of confidence that the reported results" accurately reflect "legitimate

2  votes cast." *Id.* at 8 ¶ 23.

### III.  LEGAL STANDARDS ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *See Mecinas v. Hobbs*, 30 F.4th 890, 895-96 (9th Cir. 2022). A facial attack challenges subject-matter jurisdiction on the basis that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In this context, all allegations of material fact are taken as true and construed in favor of the complaining party. *See Mecinas*, 30 F.4th at 896. In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack . . . the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In resolving a motion under Rule 12(b)(6), the court "[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### IV.  MATTERS SUBJECT TO JUDICIAL NOTICE

The California Secretary of State's office ("SOS") publishes on its official website tables compiling the voting technologies in use in each county prior to each statewide election. *See* https://www.sos.ca.gov/elections/ovsta/frequently-requested-

information/voting-systems-used-counties (last accessed Nov. 21, 2022). Prior to each of the three elections discussed in the Complaint, San Diego County used a central tabulation system made by Dominion Voting Systems called the ImageCast Central 5.10A. *See* Defendants' Request for Judicial Notice ("RJN") Exs. 1-3.

The San Diego County Registrar of Voters ("ROV") publishes on its official website a summary of the election security laws, measures, and requirements that the County follows. *See* https://www.sdvote.com/content/rov/en/electionsecurity.html (last accessed Nov. 21, 2022); RJN Ex. 4. This official government information is properly subject to judicial notice. *See* Fed. R. Evid. 201(b)(2); *Montana Green Party v. Jacobsen*, 17 F.4th 919, 927 (9th Cir. 2021) (taking judicial notice of maps and election results from state website).

Regarding the security of its voting equipment, the ROV publishes these details, condensed for brevity:

- Logic and Accuracy Testing: The ROV performs testing to validate that all contests on the ballot have been programmed accurately and that the tabulation system accurately reads votes from the ballots.

- Public Logic and Accuracy Test: The ROV performs public testing that takes place approximately 2 weeks before each election and prior to the scanning of any live, official ballots. The public is allowed to hand mark test ballots and use ballot-marking device ("BMD") machines to mark and print test ballots. Both types of test ballots are electronically tabulated, and then the public hand tallies the test ballots to confirm that the results match.

- Manual Hand Tally: After each election, a publicly observable manual tally of 1% of randomly selected mail and precinct ballot batches occurs to verify the accuracy of the automated count. Teams of three people count and verify that the number of ballots and votes in each batch matches with the electronic tabulation report for that batch.

- Voting Equipment Security: All voting equipment is required by law to have

closed connections. It is not connected to the Internet or to any other networks. Central Count tabulation machines at the ROV office are not connected to anything that can be hacked. Prior to any election, ROV staff verifies that only the trusted build of software and firmware as certified by the SOS is installed in the County's voting equipment. The SOS conducts source-code review and penetration testing to identify and resolve vulnerabilities prior to installation. The ROV follows strict physical security and chain-of-custody requirements, role-based permissions and access controls, multi-factor authentication, and password complexity, strength, length, expiration, and failed-attempt lock-out policies.

*See* RJN Ex. 4. The majority of ballots are cast by voters filling in ovals on paper ballots. *See id.* The manual hand tally started on November 15, 2022 and is now underway. *See* RJN Ex. 5.

## V.    ARGUMENT

### A.    Plaintiff's Own Allegations Defeat Standing

The jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. Const. art. III, § 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating each." *Id.* (citation omitted).

#### 1.    Plaintiff Alleges a Generalized Grievance Based on Conjecture, Not a Particularized, Actual Injury in Fact

The "foremost" element of standing is "injury in fact." *Id.* (citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a

legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citation omitted). Particularized injuries "affect the plaintiff in a personal and individual way." *Id.* (citation omitted). On the other hand, "a grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). "In other words, a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed [she] is to vindicating that general interest." *Id.* at 499 (citations omitted).

In *Wood v. Raffensperger*, the Eleventh Circuit held that the plaintiff lacked standing to assert a claim that allegedly fraudulent absentee votes diluted in-person votes. *See* 981 F.3d 1307, 1313-16 (11th Cir. 2020). The court explained that the logic of claiming injury based on ensuring that only lawful ballots are counted "sweeps past even th[e] boundary" of state lines and could be said to be shared by all Americans. *Id.* at 1314. It concluded that "[v]ote dilution in this context is a ***paradigmatic*** generalized grievance that cannot support standing." *Id.* at 1314-15 (citation omitted, emphasis added).

Within the Ninth Circuit, in *Bowyer v. Ducey*, the Arizona District Court held that the plaintiffs lacked standing to assert claims that elections officials permitted illegal votes, allowed vote manipulation, and prevented public observation, resulting in the dilution of lawful votes. *See* 506 F. Supp. 3d 699, 711-12 (D. Ariz. 2020). The court found that the allegations were "nothing more than generalized grievances that any one of the 3.4 million Arizonans who voted could make." *Id.* at 711; *see also Donald J. Trump for President v. Cegavske*, 488 F. Supp. 3d 993, 1000 (D. Nev. 2020) (identifying the "key defect" in alleged injury of vote dilution by fraud is that it is "impermissibly generalized").

Plaintiff alleges a generalized grievance in this case that is no different for standing purposes than the allegations in the *Wood* or *Bowyer* cases. Plaintiff alleges an inherent

security risk in voting machines that, by its nature, would injure all eligible voters in the same way by exposing the election results to a hypothetical possibility of vote manipulation. Plaintiff does not allege that *her* vote was manipulated or uniquely in danger of manipulation. In fact, she *expressly* alleges that the Trapdoor mechanism is present in "*[a]ll* voting systems in use in the United States, now and in 2020," Complaint at 11 ¶ 31 (emphasis added); and that "***any*** eligible voter . . . is an aggrieved party," *id.* at 64 ¶ 17 (emphasis added). She asks for an injunction to prevent injury to "American voters." *Id.* at 64 ¶ 17. In sum, she alleges a paradigmatic generalized grievance that cannot support standing. *See Pirtle v. Nago*, No. 22-381, 2022 WL 17082168, at *3-4 (D. Haw. Nov. 18, 2022) (dismissing near-identical complaint without leave to amend for lack of standing).

Moreover, Plaintiff's alleged injury is not actual or imminent but merely conjectural and hypothetical. Nowhere does she allege that bad actors actually manipulated any votes because, according to her, such actual manipulation is impossible to prove. *See id.* at 14 ¶¶ 34-35 ("[D]ue to the Trapdoor mechanism it is impossible to prove that the election was fair . . . [and] impossible to prove that the election was unfair."). Such conjectural harms cannot establish standing. *See Lake v. Hobbs*, No. 22-677, 2022 WL 3700756, at *9 (D. Ariz. Aug. 26, 2022) (granting motions to dismiss; holding alleged injuries from potentially insecure voting systems too speculative to establish injury in fact where a long chain of hypothetical contingencies must take place for any harm to occur); *see also id.* ("[T]his Court joins many others that have held that speculative allegations that voting machines may be hackable are insufficient to establish an injury in fact under Article III.") (collecting cases), *appeal filed*, No. 22-16413 (9th Cir. Sept. 16, 2022); *Roberts v. Caskey*, No. 22-2366, 2022 WL 11089308, at *4 (D. Kan. Oct. 19, 2022) (denying TRO motion; holding plaintiffs' allegation that government contracts with companies that have foreign loyalties exposed elections to foreign meddling was likely insufficient to establish injury in fact because the hypothesized meddling was conjectural or hypothetical); *cf. Election Integrity Project, Inc., et al. v.*

8

*Weber*, No. 21-56061, 2022 WL 16647768, at *1 (9th Cir. Nov. 3, 2022) (finding adequate allegations of injury in fact based on an election-integrity organization's alleged diversion of resources and staff time to monitor challenged election practices).

Accordingly, Plaintiff's allegations defeat standing because she asserts a fundamentally generalized grievance based on conjecture and hypothetical contingencies. *See Carney*, 141 S. Ct. at 498; *Wood*, 981 F.3d at 1314-15; *Bowyer*, 506 F. Supp. 3d at 711; *Lake*, 2022 WL 3700756, at *9.

### 2.    Plaintiff Alleges No Injury Fairly Traceable to Defendants

Plaintiff is also missing the second element of standing. In challenges to government action or inaction, what a plaintiff must allege to establish standing "depends considerably upon whether the plaintiff is [her]self an object of the action [or inaction] at issue." *Lujan*, 504 U.S. at 561. If she is, "there is ordinarily little question that the action or inaction has caused [her] injury." *Id.* at 561-62. However, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." *Id.* at 562. In those cases, whether the injury is fairly traceable to government conduct "ordinarily hinge[s] on the response of the . . . third party . . . and perhaps on the response of others as well." *Id.*

Plaintiff fails to allege any injury fairly traceable to Defendants. As outlined above, the County uses a system that is publicly tested, verifies its accuracy by a public hand tally, runs exclusively on trusted software subject to source-code review and penetration testing, and is never connected to the Internet. *See* RJN Exs. 4-5. But Plaintiff does not allege that this system *itself* discounts or disregards her vote. Nor does she allege the "much more [that] is needed," *Lujan*, 504. U.S. at 562, for her injury to be fairly traceable to Defendants: that there *is* a response by a third party to *Defendants'* conduct. Rather, she starts with allegations about a Florida politician who sought to control the South Florida vote in the 2000 election and then wanders into neighboring states following statistical breadcrumbs of the hypothesized Trapdoor. *See* Complaint at 23-25 (Florida), 26-30 (Georgia), 31 (Texas), 32 (Michigan), 33-34 (Arizona), 45 (Wisconsin), 50

(Nebraska). She does not allege an injury fairly traceable to Defendants. Accordingly, she is missing the second required element of standing.

### B.   Plaintiff's Suit is Barred by the Doctrine of Laches

The Court should also dismiss this action because the doctrine of laches bars this suit. Laches is "an equitable defense that prevents a plaintiff, who with full knowledge of the facts . . . sleeps upon h[er] rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (citation omitted). To establish that laches applies, a defendant must prove "both an unreasonable delay by the plaintiff and prejudice to itself." *Id.* at 951 (citation omitted). A court may dismiss an action under Rule 12(b)(6) as barred by laches where the applicability of the defense is clear on the face of the complaint. *See, e.g., George Nelson Foundation v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014).

Here, it is clear on the face of the Complaint that Plaintiff has unreasonably delayed bringing this suit and, in doing so, has prejudiced Defendants. Plaintiff filed suit almost 2 years after the November 2020 election that she seeks to de-certify. In that time, the winning candidates were sworn into office and conducted official affairs; indeed, some of them, such as members of the House of Representatives, now await certification of the results of their *re-election* campaigns. It is far too late at this point to "turn back the clock and create a world in which the 2020 election results are not certified." *Wood*, 981 F.3d at 1317 (citation omitted). Nor does Plaintiff explain her delay in bringing this suit. Indeed, the great majority of the information in the Complaint predates the year of its filing. The four declarations that provide the framework for her allegations are dated: December 6, 2004; November 29 and December 1, 2020; and August 2, 2021. *See* Complaint Exs. A (Doc. 1-2 at 38), D (Doc. 1-2 at 56), G (Doc. 1-3 at 33), H (Doc. 1-3 at 43). Plaintiff could have brought this suit more than a year earlier than she did.

The Ninth Circuit has held that where someone seeking to challenge an election's results knew of the basis for the challenge and then delayed even by a matter of months before filing, laches barred the suit. *See Soules v. Kauaians for Nukolii Campaign Commission*, 849 F.2d 1176, 1180-82 (9th Cir. 1988). It is important to bar such

1   challenges, the Ninth Circuit has recognized, "lest the granting of post-election relief

2   encourage sandbagging on the part of wily plaintiffs." *Id.* at 1180. Indeed, with respect to

3   the November 2020 presidential election, multiple courts found laches barred lawsuits

4   brought only a ***month*** after the election, in December 2020. *See Trump v. Wisconsin*

5   *Elections Commission*¸ 983 F.3d 919, 926 (7th Cir. 2020); *Bowyer*, 506 F. Supp. 3d at

6   717-19; *King v. Whitmer*, 505 F. Supp. 3d 720, 731-32 (E.D. Mich. 2020). Those courts'

7   findings of unreasonable delay and prejudice just a month after the November 2020

8   presidential election apply here with even greater force, more than 2 years after that

9   election.

10       The same is true as to Plaintiff's eleventh-hour attempt to prevent Defendants from

11   using their voting system in the recently conducted November 2022 election. Plaintiff's

12   request for an injunction to radically alter how the election was to be conducted touched

13   upon almost every aspect of the Elections Code and would have been impossible to

14   administer at a time when official ballots had already been sent to voters and elections

15   staff had already been trained on election procedures. As the facts subject to judicial

16   notice make clear, elections are governed by a complex interplay of statutory

17   requirements and deadlines; administering them well for millions of voters depends on an

18   equally complex interplay of staff, equipment, and logistics. By the time Plaintiff filed

19   suit, it was far, far too late to ask the Court to impose significant changes to the voting

20   system prepared for the November 2022 election.

21      **C.**    **Any Once-Viable Claims Would Now Be Moot**

22       Next, if Plaintiff's claims against the voting system used in three *completed*

23   elections were ever viable, they would be now moot. "Under Article III of the

24   Constitution, a live controversy [must] persist throughout all stages of the litigation." *All.*

25   *for the Wild Rockies v. Savage*, 897 F.3d 1025, 1031 (9th Cir. 2018) (citation omitted,

26   alteration in original). "A case that becomes moot at any point during the

27   proceedings . . . is outside the jurisdiction of the federal courts." *United States v.*

28   *Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted). "If an event occurs that

1    prevents the court from granting effective relief, the claim is moot and must be

2    dismissed." *Wildwest Inst. v. Kurth*, 855 F.3d 995, 1002 (9th Cir. 2017).

3        Two events have occurred that prevent the Court from fashioning effective relief:

4    (1) the certification of the November 2020 and June 2022 election results; and (2) the

5    close of voting in the November 2022 election on Tuesday, November 8, 2022. Plaintiff

6    specifically asks the Court to order Defendants to de-certify the November 2020 election

7    results and presumably wants similar relief as to results of the June and November 2022

8    elections. *See* Complaint at 68, 70, 72. However, this Court lacks the authority to de-

9    certify election results. *See Bowyer*, 506 F. Supp. 3d at 720 ("[I]f decertification were

10   possible, it would only be possible through an action brought in [state] superior

11   court. . . . [T]his [federal] Court has no power to de-certify the results."). Since this Court

12   cannot de-certify past elections or impede a state's certification of election results, there

13   is no "live" controversy for the Court to decide. Accordingly, Plaintiff's claims must be

14   dismissed. *Wildwest*, 855 F.3d at 1002.

15       **D.    Plaintiff Fails to State a Guarantee-Clause Claim**

16       The Guarantee Clause of the Constitution provides that "[t]he United States shall

17   guarantee to every State in this Union a Republican Form of Government." U.S. Const.

18   art. IV, § 4. This clause has been "an infrequent basis for litigation" since the adoption of

19   the Constitution. *New York v. U.S.*, 505 U.S. 144, 184 (1992). And the Supreme Court

20   "has several times concluded . . . that [it] "does not provide the basis for a justiciable

21   claim." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019). Here, Plaintiff fails to

22   state a Guarantee Clause claim because she asks the Court to resolve a non-justiciable

23   political question over whether the County's voting system denies California a republican

24   form of government. At any rate, her allegations do not allow the Court to plausibly draw

25   any inference that the County's voting system undermines California's form of

26   government. Accordingly, this claim should be dismissed.

27   **VII.   LEAVE TO AMEND IS NOT WARRANTED**

28       A district court should not dismiss a pro se complaint without leave to amend

1    unless it is "absolutely clear that the deficiencies of the complaint could not be cured by
2    amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).
3    Yet if Plaintiff opposes this motion and stands on her Complaint that is exactly what this
4    Court should do. Plaintiff's allegations and matters subject to judicial notice make it
5    absolutely clear that any amendment would not cure Plaintiff's lack of standing. While
6    there are five factors to consider in exercising discretion over whether to grant or deny
7    leave to amend, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), one of those factors,
8    futility of amendment, "can, by itself, justify the denial of a motion for leave to amend,"
9    *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (citation omitted).
10   Courts consider amendment futile if "no amendment would allow the complaint to
11   withstand dismissal as a matter of law." *Id.*

12         Here, it is absolutely clear that Plaintiff can add nothing to establish standing. She
13   has pleaded herself into a corner by alleging a generalized grievance about an inherent
14   security risk of voting machines that, by its nature, would injure all voters equally by
15   exposing election results to hypothetical vote manipulation. *See* Complaint at 6 ¶ 13, 11 ¶
16   31, 64 ¶ 17. And she has alleged the impossibility of proving that any third party actually
17   manipulated any votes. *See id.* at 14 ¶ 35. Accordingly, no new details added by
18   amendment would allow Plaintiff to establish the elements of standing. Accordingly, the
19   Court should dismiss the Complaint with prejudice and without leave to amend. *See*
20   *Kroessler*, 977 F.3d at 815; *Rosati*, 791 F.3d at 1039; *Pirtle*, 2022 WL 17082168, at *4.

21

22   */ / /*
23   */ / /*
24   */ / /*
25   */ / /*
26   */ / /*
27   */ / /*
28

# VIII. **CONCLUSION**

For the reasons above, the Court should grant this motion, dismiss the Complaint without leave to amend, and enter judgment dismissing this action.

DATED: November 22, 2022                    CLAUDIA G. SILVA, County Counsel

By: s/Austin M. Uhler
AUSTIN M. UHLER, Senior Deputy
Attorneys for Defendants, Nathan Fletcher,
Nora Vargas, Terra Lawson-Remer, Jim
Desmond, Joel Anderson, Cynthia Paes, and
Michael Vu